UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

ALLIANCE INDUSTRIES , INC.,

        Plaintiff,

v.                                       Civ. Action No:

LONGYEAR HOLDINGS, INC.,

        Defendant.

---

## COMPLAINT

Plaintiff, Alliance Industries, Inc. ("Alliance"), by its attorneys, Rupp, Baase, Pfalzgraf, Cunningham & Coppola LLC, for its complaint against defendant, alleges as follows:

## JURISDICTION

1. This action is commenced pursuant to 28 U.S.C. § 1332.

2. Alliance is a foreign corporation incorporated in the State of Ohio with its principal place of business in Marietta Township, Washington County, Ohio.

3. Defendant is a foreign corporation incorporated in the State of Delaware with its principal place of business in Salt Lake City, Salt Lake County, Utah.

- 2 -

4. The amount of the controversy at issue herein exceeds $75,000.

5. Alliance and defendant entered into a Stock Purchase Agreement, dated December 6, 2006, and an Escrow Agreement, dated December 6, 2006, both of which underlie this matter and which provide:

> Governing Law. This Agreement shall be governed by, and construed in accordance with, the Laws of the State of New York, regardless of the Laws that might otherwise govern under applicable principles of conflict of Laws thereof.
>
> Consent to Jurisdiction. Each of the parties (a) consents to submit itself to the personal jurisdiction of the state and federal courts of the State of New York in the event any dispute arises out of this Agreement or any of the transactions contemplated by this Agreement, (b) agrees that it will not attempt to deny or defeat such personal jurisdiction by motion or other request for leave from any such court, and (c) agrees that it will not bring any action relating to this Agreement or any of the transactions contemplated by this Agreement in any other court.

*See* Stock Purchase Agreement, attached hereto as Exhibit A and incorporated herein by reference, at p. 48, ¶¶ 9.10, 9. 12; *see also* Escrow Agreement, attached hereto as Exhibit B and incorporated herein by reference, at p. 8, ¶ 15.

6. Pursuant to 28 U.S.C. § 1391(a)(3), venue in this district is proper as the parties agreed by contract to submit to personal jurisdiction in New York State.

- 3 -

## FACTUAL ALLEGATIONS

7. Prior to December 6, 2006, Alliance owned all of the issued and outstanding shares of stock of Prosonic Corporation ("Prosonic").

8. At that time, Prosonic was in the business of providing sonic drilling services for environmental site characterization and remediation, mineral, sand and gravel exploration, geoconstruction applications, and water exploration and water supply services.

9. In 2006, Alliance and defendant entered into negotiations regarding the sale of Prosonic by Alliance to defendant.

10. During the negotiation and due diligence process, Alliance made available to defendant in an online data room more than 17,000 pages of documentation about Prosonic's business.

11. The data room was accessible by the defendant as well as defendant's representatives including but not limited to its lawyers, accountants, and insurance representatives.

12. Among other things, the data room included copies of documents related to all noticed tax audits and employee benefits plans of Prosonic. The Prosonic health insurance plan documents in the data room evidenced the plan's applicable $1 million lifetime maximum.

- 4 -

13. On or about December 6, 2006, defendant and Alliance entered into the Stock Purchase Agreement wherein and whereby defendant purchased Prosonic from Alliance for $72.5 million. On that date, Alliance and defendant also entered into the Escrow Agreement as well as a Transition Services Agreement.

14. The Stock Purchase Agreement provided that a sum of money, to wit, $725,000, was the minimum threshold for a claim of indemnification. In the event a claim or claims did not exceed in the aggregate $725,000 (the "basket amount"), no right of indemnification existed under the Stock Purchase Agreement.

15. As a result of the December 6, 2006 transaction, defendant became the sole shareholder of Prosonic.

16. Pursuant to the Stock Purchase Agreement and Escrow Agreement, defendant placed $7.25 million (the "deposit") into an escrow account held by U.S. Bank National Association (the "escrow agent").

17. The deposit was placed with the escrow agent in order to address claims for indemnification that exceeded the basket amount.

- 5 -

18.     Pursuant to the Escrow Agreement, the deposit was to be released to Alliance on April 30, 2008.

19.     Prior to April 25, 2008, defendant never notified Alliance of any claim for indemnification that affected the release of the deposit or diminished the basket amount.

20.     On April 25, 2008, three business days before the deposit was to be released to Alliance, defendant wrote to Alliance seeking indemnification for two claims. The first claim related to defendant's alleged payment of medical bills for a Prosonic employee's dependent (the "dependent claim"), and the other claim was related to payments alleged to have been made by defendant after a tax audit performed by the Florida Department of Revenue covering the years 2004 through 2006 (the "tax claim").

21.     At the request of Alliance, the undisputed portion of the deposit ($3.975 million) was released to Alliance on or about May 1, 2008.

22.     Defendant has refused to authorize and/or cooperate in the release of all or any portion of the remaining deposit, totaling $3.275 million, to Alliance.

**FIRST CAUSE OF ACTION**

23.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs of this complaint with the same force and effect as if fully set forth herein.

- 6 -

24. The Escrow Agreement provides that the disbursement of the deposit to Alliance was to be made on or about April 30, 2008.

25. Defendant has made unsubstantiated claims against the deposit, and as a result, has wrongfully refused to authorize the release of the balance of the deposit to Alliance.

26. By failing to authorize release of the deposit, defendant has breached the Escrow Agreement.

27. By reason of the foregoing, Alliance has sustained damages and is entitled to specific performance and a declaration requiring the immediate release of the remaining deposit to Alliance.

**SECOND CAUSE OF ACTION**

28. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs of this complaint with the same force and effect as if fully set forth herein.

29. Defendant claims that it is entitled to indemnification from Alliance for the dependent claim and the tax claim because, it alleges, Alliance breached certain representations and warranties contained in the Stock Purchase Agreement.

- 7 -

30. To the contrary, Alliance complied with all of its obligations under the Stock Purchase Agreement.

31. The Stock Purchase Agreement provides:

> Indemnification by Seller and Lehman. After the Closing Date and subject to the limitations, terms and conditions set forth in this Article VI, Seller and Lehman, jointly and severally (the "Seller Indemnifying Parties"), shall indemnify and hold harmless Buyer and its respective officers, directors, employees, agents, and Affiliates, and the successors and assigns of any of the foregoing, against any and all damages resulting from claims, obligations, losses, fees, costs and expenses (including those charges by counsel and other advisors in connection with investigating, defending, prosecuting, or settling any matter giving rise to a claim under this Article VI), Taxes, penalties, and other liabilities or damages, whenever arising or incurred (including amounts paid in settlement) (each individually a "Loss," and collectively, "Losses"), arising out of, directly or indirectly, (a) any breach of any representation or warranty made by Seller or Lehman in this Agreement, (b) the breach by Seller or Lehman of any covenant to be performed by Seller or Lehman contained in this Agreement, and (c) the breach by the Company of any covenant to be performed prior to the Closing by the Company contained in this Agreement, or (d) any claim arising under The Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201 et seq., or any similar state or local Laws, regardless of whether Seller has disclosed any instances of noncompliance to Buyer, regarding the classification of employees as exempt or nonexempt or bonus payments made to nonexempt employees for periods of employment prior to the Closing Date.

Exhibit A, p. 35, ¶ 6.1.

- 8 -

32. Alliance did not breach any of the representations and warranties contained in the Stock Purchase Agreement.

33. As a result, defendant is not entitled to indemnification under the Stock Purchase Agreement.

34. Nevertheless, defendant wrongfully refuses to authorize disbursement of the remaining deposit.

35. By failing to authorize the release of the remaining deposit to Alliance, defendant has breached the terms of the Stock Purchase Agreement and the Escrow Agreement.

36. By reason of the foregoing, Alliance has sustained damages and is entitled to specific performance and a declaration requiring the immediate release of the remaining deposit to Alliance.

**THIRD CAUSE OF ACTION**

37. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs of this complaint with the same force and effect as if fully set forth herein.

38. The Stock Purchase Agreement provides:

> 8.4    Controversies.  Buyer [Longyear Holdings, Inc.] shall notify Seller [Alliance Industries, Inc.] upon receipt by Buyer or any Affiliate of Buyer of any notice of any inquiry, assessment, claim, demand, charge, complaint, action, suit, proceeding, hearing, audit or investigation, whether judicial or administrative, or similar events received from any Governmental Entity with respect to Taxes of the Company [Prosonic] or any Company Subsidiary for which Seller would be required to indemnify any Buyer Indemnitee pursuant to Article VI (any such inquiry, assessment, claim, demand, charge, complaint, action, suit, proceeding, hearing, audit or investigation, or similar event, a "Tax Matter").  No delay on the part of Buyer in notifying Seller shall relieve Seller from any obligation hereunder except to the extent that Seller is prejudiced thereby.  Seller may, at its own expense, participate in and, upon notice to Buyer, assume the defense of any such Tax Matter.  If Seller assumes such defense, Seller will have the authority, with respect to any Tax Matter, to represent the interest of the Company and the Company Subsidiaries before the relevant Governmental Entity and will have the right to control the defense, compromise or other resolution of any such Tax Matter, including responding to inquiries, and contesting, defending against and resolving any assessment for additional Taxes or notice of Tax deficiency or other adjustment of Taxes of, or relating to, such Tax Matter.  Buyer has the right (but not the duty) to participate in the defense of such Tax Matter and to employ counsel, at its own expense, separate from the counsel employed by Seller.  Seller must not enter into any settlement of or otherwise compromise any such Tax Matter without prior written consent of Buyer (which consent shall not be unreasonably withheld).

Exhibit A, p. 40, ¶ 8.4

39.     In breach of its obligations under the Stock Purchase Agreement, defendant failed to notify Alliance of the Florida Department of Revenue's tax audit of Prosonic, defendant's affiliate, for the years 2004 through 2006.

40.     Alliance was prejudiced by defendant's failure to notify it of the tax audit in a timely manner.

41.     By reason of the foregoing, Alliance has sustained damages and is entitled to specific performance and a declaration requiring the immediate release of the remaining deposit to Alliance.

**FOURTH CAUSE OF ACTION**

42.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs of this complaint with the same force and effect as if fully set forth herein.

43.     The Stock Purchase Agreement provides:

> The amount of any claim for indemnification payable under this Agreement shall be reduced by any insurance proceeds and Tax benefits actually received on account thereof. Each party agrees to promptly make a claim against any applicable insurance policy with respect to any indemnification amount payable under this Agreement.

Exhibit A, p. 37, ¶ 6.4(c).

- 11 -

44. At or shortly after the closing, Prosonic's employees became eligible for health coverage under defendant's employee benefits plan.

45. Defendant's health insurer allegedly refused to provide health coverage to a Prosonic employee's dependent who was in the hospital.

46. Defendant did not notify the Prosonic employee's former health insurer or seek COBRA coverage from it for the employee's dependent.

47. Moreover, defendant did not seek Alliance's assistance in notifying the health insurer or otherwise. Indeed, defendant did not notify Alliance of these circumstances.

48. As a result, defendant breached the Stock Purchase Agreement by failing to "promptly make a claim against any applicable insurance policy. . ."

49. Upon information and belief, if defendant had complied with the Stock Purchase Agreement by notifying the Prosonic employee's former health insurer, the employee's dependent would have continued to be eligible for health insurance benefits under the former health insurance policy up to the lifetime maximum of $1 million.

50. Upon information and belief, if defendant had notified the former health insurer, defendant would not have sustained the alleged loss that underlies the dependent claim.

- 12 -

51.     Any loss sustained by defendant was as a result of voluntary payments made by it.

52.     By reason of the foregoing, Alliance has sustained damages and is entitled to specific performance and a declaration requiring the immediate release of the remaining deposit.

**WHEREFORE**, plaintiff demands judgment against the defendant and a declaration of this Court requiring immediate release of the remaining deposit to plaintiff, together with interest, the costs and disbursements of this action, attorneys' fees, and such other and further relief as this Court deems just and proper.

Dated:   July 1, 2008
         Buffalo, New York

                              **RUPP, BAASE, PFALZGRAF,**
                              **CUNNINGHAM & COPPOLA LLC**
                              Attorneys for Plaintiff Alliance Industries, Inc.


                              By:    /s/ Lisa A Coppola
                                     Lisa A. Coppola, Esq.
                              1600 Liberty Building
                              Buffalo, New York 14202
                              (716) 854-3400
                              coppola@ruppbaase.com