UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
───────────────────────────────

ALLIANCE INDUSTRIES, INC.,

        Plaintiff / Counter-Defendant,

v.                                           **DECISION AND ORDER**
                                                               08-CV-490S

LONGYEAR HOLDINGS, INC.,

        Defendant / Counter-Plaintiff.
───────────────────────────────

## I. INTRODUCTION

Plaintiff, Alliance Industries, Inc. ("Alliance") commenced this diversity action on July 2, 2008 alleging, *inter alia*, that Defendant Longyear Holdings, Inc., ("Longyear") unlawfully withheld funds from an escrow account pursuant to the sale of Alliance's subsidiary, Prosonic Corp. ("Prosonic"). Longyear answered and asserted eleven counterclaims, alleging that it withheld the funds because Alliance breached the Stock Purchase Agreement ("Agreement"), which memorialized the sale. Each party eventually moved for summary judgment. (Docket Nos. 88, 95.) The Honorable Hugh B. Scott, United States Magistrate Judge, entered a Report and Recommendation advising this Court to grant in part and deny in part Alliance's motion for summary judgment and to deny in full Longyear's motion. (Docket No. 112.) By Decision and Order dated February 28, 2012, this Court adopted in part and set aside in part that Recommendation. (Docket No. 127.) In the Decision, this Court granted Longyear's motion for summary judgment regarding several of Alliance's claims and Longyear's counterclaims. Alliance now moves for reconsideration of that Decision under Fed. R. Civ. P. 59(e). For the following reasons, Alliance's motion

is denied.

## II. BACKGROUND

**A.  Facts**

This Court assumes the parties' familiarity with the underlying facts. Some explanatory factual background, however, remains necessary.[1]

This action arises from complications surrounding Longyear's full stock purchase of Alliance's subsidiary, Prosonic for $72.5 million. (Pl.'s State. of Facts ¶ 1; Docket No. 91.)[2] That purchase was finalized December 6, 2006 by the Agreement. (Id., ¶ 5.)

In September of 2006, a Prosonic employee, covered by Alliance's health insurance, had a child who was born with serious medical ailments.[3] (Id., ¶ 30.) Tragically, the child never recovered from these birth defects, and after several months in the hospital, died in December of 2007. (Id.; Def.'s State. of Facts, ¶ 150.)[4] According to Longyear, the total medical costs, which ultimately became its responsibility, amounted to nearly $3 million.[5] (Def.'s State. of Facts, ¶¶ 142, 149). Longyear had its own insurance policy for these

---

[1] For a fuller description of the facts, see this Court's earlier Decision and Order. Alliance Indus., Inc. v. Longyear Holdings, Inc., --- F. Supp. 2d ----, No. 08-CV-490S, 2012 WL 651439, at *1-*3 (W.D.N.Y. Feb. 28, 2012).

[2] This Court has accepted facts in each parties' statement of facts to the extent that they have not been controverted by the opposing party. See Local Rule 56(a)(2) (statements not specifically controverted are deemed admitted).

[3] For privacy reasons, this Court will refer to the child simply as the "child" or "infant."

[4] Longyear's Statement is not docketed on CM/ECF. It is maintained in paper form only in the Clerk's Office at the Western District of New York.

[5] Alliance objects to this figure on hearsay grounds. But because this allegation serves as the basis for the litigation, it is included for informational purposes.

employees, which became effective January 1, 2007. (Id., ¶ 146.) But this policy did not cover the infant's claim because it excluded any dependant of an employee who was already hospitalized at the time the policy began. (Id., ¶¶ 146-147.)

Alliance learned of the child's birth in October of 2006 and by November, it was aware that the medical costs had exceeded $400,000. (Pl.'s State. of Facts, ¶¶ 33, 37; Def.'s State. of Facts, ¶ 107.) However, Alliance did not affirmatively disclose this event as a liability during the purchase negotiations or due diligence period because the liability was covered by its stop-loss insurance. (Pl.'s State. of Facts, ¶ 25.) Pursuant to Alliance's standard accounting practice, health benefit related costs were not booked until the expense was actually incurred. (Id., ¶ 29.) In this case it booked $50,000, but nothing over that amount, because its insurance provider covered the remainder. (Id., ¶¶ 28, 41, 42.)

Longyear contended that Alliance's failure to disclose the infant's claim violated § 2.1(f)(ii) of the Agreement, which provides: "There are no liabilities of [Prosonic] or any [Prosonic] Subsidiary, except: . . . (B) those arising subsequent to September 30 2006, in the ordinary course of business consistent with past practice."

### III. DISCUSSION

**A.    "Motion for Reconsideration" Standard**

Although the Federal Rules of Civil Procedure do not explicitly provide for "motions for reconsideration," courts typically consider motions of this kind under Fed. R. Civ. P. 59(e). Hill v. Lashburn, No. 08-CV-6285-CJS-JWF, 2011 WL 4807921, at *1 (W.D.N.Y. Oct. 11, 2011) (citing Hamilton v. Williams, 147 F.3d 367, 371 n. 10 (5th Cir. 1998)). "The standard for granting such a motion is strict, and reconsideration will generally be denied

unless the moving party can point to controlling decisions or data that the court overlooked — matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." Shrader v. CSX Transp. Inc., 70 F.3d 255, 257 (2d Cir. 1995). While district courts may alter or amend judgment "to correct a clear error of law or prevent manifest injustice," Munafo v. Metropolitan Transportation Authority, 381 F.3d 99, 105 (2d Cir. 2004), reconsideration is not a proper tool to repackage and relitigate arguments and issues already considered by the court in deciding the original motion, United States v. Gross, No. 98–CR–0159, 2002 WL 32096592, at *4 (E.D.N.Y. Dec. 5, 2002). Nor is it proper to raise new arguments and issues. Lehmuller v. Inc. Vill. of Sag Harbor, 982 F. Supp. 132, 135 (E.D.N.Y. 1997). Finally, relief under this provision lies within the sound discretion of the court. Schwartz v. Liberty Mut. Ins. Co., 539 F.3d 135, 150 (2d Cir. 2008).

**B.     Alliance's Motion**

In its February 26, 2012 Decision and Order, this Court found, *inter alia*, that the infant's claim was Alliance's liability and that Alliance breached § 2.1(f)(ii) of the Agreement when it failed to disclose it as such. That breach, this Court also found, caused Longyear's damages.

Alliance argues that these findings were in error. Specifically, it argues that because this Court found that *Alliance* retained liability for the infant' claim, it did not breach § 2.1(f)(ii), which required only *Prosonic* to disclose its liabilities. According to Alliance, "The Court erred in conflating liabilities of Alliance (for which there were no representations or warranties) and liabilities of Prosonic (the only entity covered by the 'no undisclosed liabilities representations')." (Pl.'s Br. in Supp. of Reconsideration, at 5; Docket No. 128-3.)

But two undisputed facts demonstrate that no conflation occurred: (1) the infant was a dependant of an insured Prosonic employee (see Pl.'s State., ¶ 30) and (2) Alliance allocated health care liabilities to the company where the employee who incurred the cost was employed. John Walsh, Alliance's Vice President of Human Resources, testified to the latter fact:

> Alliance is a holding company that holds . . . at this time a series of companies. We've always allocated the health care costs, for example, out which was essentially a pro rata share [sic]. They had "X" number of participants in the program. There was a premium basis on that head count. And then the claims or – the companies that Alliance holds are set up in the health care plan departmentally. *So the claims that would come in above and beyond the premiums are tied to those department numbers, and you simply – we simply just allocate that entire claim to whichever company incurred it, whichever company's employee incurred it, I should say.*

(Walsh Dep., 51:16-52:21, attached as "Ex. 87" to Longyear's Mot. for Summ. J. (emphasis added); see also Walsh Dep., 69:25-71:1 (same)).[6]

Therefore, this Court, along with the parties,[7] was aware that although health care costs were covered by Alliance's insurance policy, medical costs deriving from a Prosonic employee were attributed to Prosonic. Thus, when this Court found that "the sole risk of loss belongs to Alliance," and that the health claim represented a liability, it was working under the undisputed premise that the liability, because it was incurred by a Prosonic dependant, was attributable to Prosonic in accordance with Alliance's stated policy and

---

[6]Retained in paper form only at the Clerk's Office in the Western District of New York.

[7]Despite its current argument, even Alliance referred to its health coverage obligation as belonging, interchangeably, to Alliance and Prosonic. Compare, e.g., Pl.'s State. of Facts, ¶ 25 ("*Alliance* had to pay $50,000 of an employee's or dependent's medical claims in a calender year, and then Alliance's stop-loss carrier would cover the remainder . . .") with Pl.'s Br. in Supp. of Summ. J., at 16 ("*Prosonic* was or would be responsible for – at most – $50,000") (emphasis added).

corporate structure. As such, § 2.1(f)(ii) required its disclosure and Alliance's failure to do so resulted in breach.

\*\*\*

Alliance also argues that this Court improperly found that its breach caused Longyear to suffer damages. Longyear, however, offers no "controlling decisions or data that the court overlooked." See Shader, 70 F.3d at 257. At most, it notes that there is no evidence in the record substantiating Longyear's claim that it would have negotiated a lower purchase price if it knew about the infant's claim. But this fact does not alter this Court's finding, which is that as a "natural and direct consequence" of Alliance's breach, Longyear unwittingly incurred a $2.9 million responsibility. See Bennett v. U.S. Trust Co., 770 F.2d 308, 316 (2d Cir. 1986). This is so because "[t]he buyer of a business bringing a breach of contract claim is entitled to be put in the position they would have occupied had the seller's representations and warranties been true." Koch Indus., Inc., v. Aktiengesellschaft, 727 F. Supp. 2d 199, 220 (S.D.N.Y. 2010) (citing Merrill Lynch & Co. Inc. v. Allegheny Energy, Inc., 500 F.3d 171, 185 (2d Cir. 2007)). Had Alliance's representation been true – *i.e.*, it did not have a $2.9 million medical claim liability – Longyear would not have become responsible for that sum when it purchased Prosonic. Instead, Alliance breached it representation, and Longyear took on a $2.9 million claim as a direct result.[8] Alliance's argument that this causal chain was broken by Longyear's failure to obtain its own comprehensive insurance is rejected as irrelevant, just as it was in this Court's original Decision.

---

[8]Some of the recoverable damages may be limited by the Agreement. As certain claims and a fee-application motion remain pending, this Court takes no position on that matter at this time.

Accordingly, Alliance's motion for reconsideration is denied.

## IV. CONCLUSION

For the reasons discussed above, Alliance's motion is denied.

## V. ORDERS

IT HEREBY IS ORDERED, that Alliance's Motion for Reconsideration (Docket No. 128) is DENIED.

SO ORDERED.

Dated:   May 18, 2012
         Buffalo, New York

                                        /s/William M. Skretny
                                        WILLIAM M. SKRETNY
                                        Chief Judge
                                        United States District Court